WILFRED PELLETIER *vs.* HACHADOR BOZOIAN *et al.*

DECEMBER 19, 1947.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

FLYNN, C. J. This bill in equity seeks to compel the respondents to specifically perform an agreement for the sale of certain real estate. The cause is before us on the respondents' appeal from a decree of the superior court, entered after a hearing on bill, answer and proof, granting the relief prayed for by the complainant and denying that prayed for by the respondents.

The following facts are disclosed by the evidence. The respondents, Hachador Bozoian and Alice Bozoian, are husband and wife, and the former, who will be referred to hereinafter as the respondent, was the record owner of two adjoining parcels of land situated in the city of Woonsocket. One of these parcels was purchased by him from Henry L. Cook and the other from Jacob W. Wilbur. All of the Cook land and a portion of the Wilbur land immediately adjoining it were platted into house lots as shown by a plat entitled "Bozoian Plat Lots for Sale By H. Bozoian Woonsocket R. I. September 1924." This plat was never recorded, but it was used by the respondent in selling lots and by the parties in their discussions.

The complainant and respondent, following negotiations, entered into an agreement for the purchase and sale respectively of certain lots on that plat, as set forth in a written memorandum that was signed by the respondent on October 29, 1945. This memorandum is the basis of the bill. It appears on two small pieces of paper, which are fastened together, and reads as follows:

"10-29-45

Have received from Mr Wilfrid Pelletier the sum of one hundred ($100.) for a deposit on Bozoian Plat. The agreement as such for $4000. the Balance is $3900 Oct 29-45 . (Signed) H Bozoian"

"10-29-45

Two lot of 30 x 70 is not included in this plat such lot as #31 & 32 known as such on plat. All this land I purchased it from Mr. Henry L. Cook. That is One I sold to hime.

(over) (Signed) H Bozoian

Witness (Signed) Joseph H Vincent

Lots that have been sold by Mr. Bozoian are as follow 1 and 12, 5, & 6, 42, 43, 44, 45, 46, 47, these lot are on such plat."

The memorandum was actually written by Joseph H. Vincent, son-in-law of the complainant, who also witnessed the signature of the respondent. The latter's wife was present during the negotiations immediately preceding the signing thereof. She heard all the conversation between her husband and the complainant, talked to her husband at times concerning the sale, and also procured from another room the copy of the plat which was used and referred to in such negotiations and agreement. However, she was not asked to sign and did not sign the memorandum and, according to her testimony, she did not authorize her husband to sign it as her agent. Elsewhere, however, she testified in effect that she would not withhold her signature from a deed of any property that her husband owned and had sold, provided it was restricted to "the Cook land."

There is some conflict in the evidence as to whether the complainant was ready, willing and able to complete the

purchase within a reasonable time. The respondent complained that the matter was unreasonably postponed by the complainant thereby requiring payment of another year's taxes, for which reimbursement was sought under a prayer for relief in the answer. Other than that, it is not denied that the complainant was ready, willing and able to complete the agreement as he interpreted and alleged it in the bill. The complainant, on the other hand, charges that the respondent refused to complete the transaction as agreed.

The trial justice concluded that the complainant was ready, willing and able to carry out his agreement within a reasonable time; that he made proper tender and a demand on respondents to execute and deliver a good and sufficient deed to the property; and that the respondents refused so to do. He further found that the credible evidence showed the presence of the respondent wife at, and her participation in, the final negotiations for the sale of the land, and that her silence and conduct in the circumstances estopped her equitably from denying that her husband had signed the agreement as her agent. He finally concluded that the credible evidence showed that the parties had agreed upon a sale and conveyance of all the lots on the Bozoian plat excepting only those specifically mentioned. Accordingly he granted the complainant's prayer for specific performance as to all such lots and denied respondents' prayer for reimbursement for taxes.

The respondents contend chiefly that the memorandum of agreement plainly related only to land purchased from Henry L. Cook, or was at least not sufficiently clear and definite to satisfy the statute of frauds; that specific performance should be denied where the memorandum does not clearly express the intentions of the parties, or is the result of a mistake, or both; and that the respondent wife never signed or authorized anyone to sign the agreement as her agent, and therefore under the statute of frauds cannot be compelled to release her inchoate dower.

In our opinion the trial justice's conclusions and decision

were influenced substantially by, if not based wholly upon, the weight of what he found to be the credible testimony of the parties. The primary question, however, was properly determinable from a consideration of the written memorandum of the agreement and the undisputed evidence, the credibility of which was not open to attack.

The first part of the memorandum makes it clear that the agreement provided for the conveyance of all the unsold lots on the Bozoian plat with the exception only of lots 31 and 32, which were specifically excluded. If that were all, the description of the land to be conveyed would be clear and definite enough to satisfy the statute of frauds and the requirements of equity as to specific performance.

But the description continues as follows: "All this land I purchased it from Mr. Henry L. Cook. That is One I sold to hime." These two sentences relate to the same subject matter, namely, the description of the land to be conveyed, and we think that they were intended to serve some useful purpose. Clearly they disclose an attempt by the respondent to confine the sale and conveyance to such unsold land as he had bought from Henry L. Cook. No other satisfactory reason for their inclusion therein has been suggested. By their addition in the memorandum, however, the description of the land to be conveyed becomes uncertain and, at least as to lot 40, is inconsistent.

According to one interpretation, the agreement provided for a conveyance of all unsold lots on the plat excepting only lots 31 and 32. On that view, clearly the agreement would include lot 40, which is shown on the plat. The other view, however, would exclude not only lots 31 and 32 but also lot 40, because that was located on the Wilbur parcel and was not a part of the land purchased from Henry L. Cook.

The difficulty becomes more pronounced when it is recalled that the complainant admits that the whole memorandum was written by his own agent, that is, his son-in-law; and he does not deny that the respondent insisted on

the insertion of the two sentences that in effect would confine the sale to lots located on the Cook parcel. It is well established that where an agreement or memorandum contains materially ambiguous or inconsistent language, it is ordinarily interpreted more strongly against the writer thereof. *Gilman* v. *Murphy,* 67 R. I. 149, 154. Moreover, the respondent positively testified that he had also shown the complainant around the outside bounds of the Cook parcel as the limit of land he was willing to sell. Although the complainant indirectly attempted to explain away the damaging effect of such testimony, he did not specifically deny that the respondent had pointed out what purported to be the bounds of the Cook land, which did not include lot 40.

Having in mind these undisputed facts and the ambiguous or inconsistent statements in the written memorandum, we are of the opinion that the description of the land therein is not applicable or adaptable to only one parcel so as to warrant a decree for specific performance as a whole. *Sholovitz* v. *Noorigian,* 42 R. I. 282; *Preble* v. *Higgins,* 43 R. I. 10. See also *Sorel* v. *Miller,* 73 R. I. 16. Therefore in our opinion it was error to grant specific performance of the agreement as set forth in the bill and as appears in the decree.

In view of that conclusion we need not consider the further question whether specific performance was properly ordered against the respondent wife in connection with the release of her inchoate right of dower. We also find no ground to disagree with the trial justice on his denial of the affirmative relief prayed for by the respondents in their answer. However, the complainant is left, without prejudice, to his remedy at law for reimbursement for expenditures, if any, made by him to benefit the land in a way so as to make the respondents liable.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*William R. Goldberg,* for complainant.

*George Ajootian,* for respondents.