[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter comes before the Court on Plaintiff's Motion for Specific Performance on a June 5, 2003 Purchase and Sales Agreement for the sale of "the rear portion of Lot 196 on Assessor's Plat 275 SCHOOL STREET (ALBION), LINCOLN, RHODE ISLAND." Defendant objects to Plaintiff's Motion for Specific Performance and moves this Court for Summary Judgment on the basis that the June 5, 2003 agreement is unenforceable as a matter of law.
 Facts
Plaintiff Lucien Gendron and Defendant Robert Bruni are neighbors residing on School Street in the village of Albion, Town of Lincoln, Rhode Island The Defendant owns property at 275 School Street, also referred to Assessor's Plat 273, Lot 196. The Plaintiff owns the abutting property at 273 School Street in the village of Albion, Town of Lincoln, Rhode Island
Plaintiff and Defendant have been neighbors for over thirty years. Throughout the course of those years, the Plaintiff displayed an ongoing interest in purchasing a certain portion of land at the rear of Defendant's property which also encompassed property to the rear of the Plaintiff's property.
On June 5, 2003, Plaintiff and Defendant signed a Purchase and Sales Agreement for the purchase of "The rear portion of Lot 196 on Assessor's Plat 275 SCHOOL STREET (ALBION) LINCOLN, RHODE ISLAND" owned by Defendant for the purchase price of $10,000.00. The Defendant received a deposit check from the Plaintiff which the Defendant cashed. After the agreement was signed, the Plaintiff hired Marsh Surveying, Inc. to survey the Defendant's property.
In July of 2003, the Plaintiff forwarded to Defendant a survey prepared by Stephen T. Long, a registered land surveyor, outlining a proposed amount of land for sale by the Defendant to the Plaintiff. Upon learning the amount of land that Plaintiff was seeking to acquire, Defendant refused to close on the transaction on August 15, 2003. On September 18, 2003, Plaintiff recorded the Purchase and Sales Agreement in the Town of Lincoln Land Evidence Records at Book 1066, Page 128.
At the time the agreement was entered into on June 5, 2003, Defendant owned said property with his wife, Claire M. Bruni, as tenants by the entirety. On July 31, 2003, the Defendant and his wife signed a Quit-Claim Deed, conveying the property to Defendant alone.
Plaintiff is before this Court seeking specific performance of the Purchase and Sales Agreement. Defendant objects to Plaintiff's Motion for specific performance and moves this Court for summary judgment. Additionally, Defendant asks this Court to order Plaintiff to discharge the recorded Purchase and Sales Agreement, which clouds Defendant's title to the property.
 Standard of Review
Specific performance is an equitable remedy well-suited to actions involving real property given the presumption that land is unique. O'Halloran v. Oechslie, 402 A.2d 67, 70 (Me. 1979). Case law consistently reaffirms that the equitable remedy of specific performance lies within the discretion of the trial justice. Gaglione v. Cardi, 120 R.I. 534, 540, 388 A.2d 361, 364 (1978); see also Griffin v. Zapata, 570 A.2d 659 (R.I. 1990); Eastern Motor Inns v. Ricci, 565 A.2d 1265 (R.I. 1989). A Court has a responsibility not to order specific performance of indefinite obligations. St. Lawrence v. Reed, 60 A.2d 734, 736 (R.I. 1948).
Super. R. Civ. P. 56 empowers a trial justice, upon proper motion, to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus in a proceeding for summary judgment, the court must "examine the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." Buonanno v. Colmar BeltingCo., Inc., 733 A.2d 712, 715 (R.I. 1999) (citing Textron,Inc. v. Aetna Casualty and Surety Co., 638 A.2d 537, 539 (R.I. 1994)). The party opposing a motion for summary judgment may not merely rely upon mere allegations or denials in his or her pleadings. Small Business Loan Fund v. Loft, 734 A.2d 953, 955 (R.I. 1998) (citing Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998)). Rather, "[a] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers of Cranston,Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 Signature on Agreement
This Court first addresses Defendant's claim that the June 5, 2003 agreement is void because at the time the agreement was entered into it lacked the appropriate signature of a co-tenant in the entirety. It is Defendant's position that Plaintiff cannot compel specific performance of an agreement which Defendant could not be compelled to grant without the consent of his wife. Defendant further maintains that the July 31, 2003 conveyance via Quit-Claim Deed is without significance because said conveyance was subsequent to the Purchase and Sales Agreement which was entered into when the joint tenancy was still in place.
Conversely, Plaintiff contends that the conveyance by Quit-Claim Deed on July 31, 2003, cured any defect regarding the absence of a necessary signature, as it made Defendant the sole owner of the property, capable of closing on August 15, 2003. While Defendant concedes that at the inception of the Purchase and Sales agreement, the purchase was unenforceable, Plaintiff maintains that Defendant waived this defense when he became the sole owner of the property before the date that performance on the agreement was sought. This Court agrees.
The Rhode Island Supreme Court has held that the inability of one party to enforce an agreement at the time of its inception does not necessarily preclude a party from obtaining specific performance if mutuality of remedy exists at the time the suit is filed. See Safeway Systems, Inc. v. Manuel Bros., Inc.,228 A.2d 851 (R.I. 1967). Applying similar reasoning, in Hood v.Hunt, 339 S.W.2d 97 (Ark. 1960) the Arkansas Supreme Court held that the incapacity to perform a contract is judged not at its inception, but at the time its performance is sought.
In the present case, Defendant was the sole and rightful owner of the property before performance was due and any defect regarding absence of the Defendant's wife's signature was cured with the conveyance on July 21, 2003. Consequently, this Court finds Defendant's argument that the agreement was invalid for lack of his wife's signature unavailing.
 Description of Property
The second issue for this Court to determine is whether the description in the agreement describing the property to be sold is sufficient to identify the property to be sold. Defendant asserts that the description "the rear portion of Lot 196 on Assessor's Plat, 275 SCHOOL STREET (ALBION), LINCOLN, RHODE ISLAND" is too vague and lacks the appropriate definitiveness that a claim for specific performance requires. It is Defendant's position that because the "rear portion" fails to identify any boundaries, landmarks, posts, markers, or direction that the proposed parcel was going to encompass, the parcel at issue is not ascertainable and therefore Plaintiff's action should fail as a matter of law.
Although Plaintiff concedes that parol evidence would be necessary to identify the exact portion of the rear lot to be sold according to the intent of the parties, Plaintiff maintains that the description in the agreement is certain enough to enforce the agreement. It is Plaintiff's contention that because the description refers to a definite lot, all of which is owned by the Defendant, and gives a street number as well as stating what portion of the lot is at issue, extrinsic evidence can easily clear up any discrepancies regarding the parcel of land to be sold. Thus, it is Plaintiff's position that the terms of the agreement are sufficiently definite for the Court to properly award specific performance. This Court does not agree.
The Rhode Island Supreme Court has repeatedly held that where an agreement contains ambiguous or inconsistent statements such that the description of the land therein is not applicable or adaptable to only one parcel, specific performance is not warranted. See Pelletier v. Bozoian, 56 A.2d 177, 180 (R.I. 1947) (citing Sholovitz v. Norrigian, 107 A. 94, 97 (R.I. 1991)); Preble v. Higgins, 109 A. 707, 710 (R.I. 1920). This position is consistent with the treatise analysis on specific performance which states:
 "To support specific performance, a contract must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed; it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties. In other words, the contract must be sufficiently certain to provide a basis for an appropriate order.
 A contract is sufficiently definite and certain to be specifically enforceable if it contains provisions that are capable in themselves of being reduced to certainty or of being made certain by the aid of legal presumptions or evidence of established customs, and from which the intention of the parties can be clearly ascertained. Thus, the existence within the contract of a method or means by which uncertain terms may be made certain renders the contract sufficiently certain to be specifically enforceable."
71 Am Jur 2d SPECIFIC PERFORMANCE § 36.
Other Courts that have addressed agreements using similar descriptive language to that used in the instant case have concluded that specific performance could not be awarded because the property descriptions contained in those agreements were inadequate. For example, in Corona Unified School District ofRiverside County v. Francisco Vejar, 332 P.2d 294 (Cal. Dist. Ct. App. 1958) the California Fourth Appellate District Court of Appeals held that the description "Submitting twelve acres school site $15,000 net to me. Southwest part of Lot 2 to Trinidad Yroba Tract adjoining subdivision per conversation of April 4-55," was too ambiguous for the court to award specific performance. The court declared that based on the description there was no way for the court to delineate the exact property at issue without orally supplying missing elements of the description. Id. at 297-98. The court noted "there is no way from the description to assign to it any width or depth." Id. at 297. The court went on to state:
 "The description contained in the escrow agreement likewise is defective in the same particulars. It does not tie itself to any point, does not mention in any way that any stakes were placed on the ground, and is completely devoid of any method by which any person by reference to any existing writing, map or chart of any kind could find it even with the aid of extrinsic explanatory evidence. In this state of the evidence, we have no alternative but to find that the description in the agreement is insufficient to support an action for specific performance."
Id. at 297-98.
Similar reasoning was applied by the Third Circuit Court of Appeals in Wills v. Young, 255 F.2d 65 (3d Cir. 1958), wherein the court denied specific performance because the terms of the contract were not definite enough and it would not be possible for a competent surveyor to find the land in question from the agreement or from the references made to it. In that case the description at issue involved an easement and stated `"The seller hereby reserves to himself and his successors an easement of thirty feet on the lot II2A as a road."' Id. at 67. Finding this description too ambiguous, the Court declared:
 ". . . equity can enforce a contract only where it is reasonably certain of the subject matter of its enforcement. This general principle applies to the specific enforcement of agreements relating to the purchase of land As a condition of the enforcement of such an agreement, the land must be described in the agreement with reasonable particularity."
The court went on to state:
 ". . . a thing will be considered certain which can be made certain. Many cases have expressed the controlling principles involved here by holding that a description is adequate if it would enable a competent surveyor to find and identify the land with the aid only of the description itself and of proper extrinsic facts referred to in the agreement."
Id.
Like the descriptions of land in Corona and Wills, the description of land in the present case is too indefinite for this Court to award specific performance. Although the lot at issue is designated in the agreement, there is nothing in the agreement or in any extrinsic evidence supplying the meaning of "rear portion." Additionally, the parties to this agreement clearly had different notions about what the term "rear portion" included. Left without any metes or bounds, and without any dimensions, there is no way to clarify which portion of the land was at issue in the Purchase and Sales Agreement. As the Wills
Court stated: "Equity does not decree specific performance predicated upon fair presumption or good guesses . . . at which one of these places was intended, we can only surmise, and surmise should not move the chancellor to decree specific performance." Wills, 255 F.2d at 68. It is not for the Court to arbitrarily decide what the term "rear portion" entails. SeeSt. Lawrence, 60 A.2d at 736.
 Conclusion
Because the description of land in the June 5, 2003 Purchase and Sales Agreement is vague and ambiguous, this Court must deny Plaintiff's Motion for Specific Performance. As the Court finds that there are no genuine material facts in dispute and Defendant is entitled to summary judgment as a matter of law, this Court grants Defendant's Motion for Summary Judgment. Additionally, finding that the agreement is too ambiguous to be enforceable, this Court orders Plaintiff to discharge the recorded Purchase and Sales Agreement on Defendant's title to this property.